# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

TAMMY R. BARRINGTON,                )
                                    )
            Plaintiff,              )
                                    )
v.                                  ) Case No. CIV-08-403-KEW
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social              )
Security Administration,            )
                                    )
            Defendant.              )

## OPINION AND ORDER

Plaintiff Tammy R. Barrington (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on August 11, 1963 and was 44 years old at the time of the ALJ's decision. She completed her high school education. Claimant has engaged in past relevant work as a store clerk, route driver, insurance secretary, general office clerk, and insurance agent. Claimant alleges an inability to work beginning

August 31, 2004 due to reflex sympathetic dystrophy syndrome ("RSDS") in her dominant right upper extremity which causes pain, numbness, swelling, muscle spasms, and inability to use her right upper extremity.

## Procedural History

On September 8, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, et seq.) of the Social Security Act. Claimant's application for benefits was denied initially and upon reconsideration. On February 11, 2008, Claimant appeared at a hearing before ALJ Michael Kirkpatrick in Paris, Texas. By decision dated May 14, 20008, the ALJ found Claimant was not disabled at any time through the date of the decision. On September 15, 2008, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found Claimant retained the residual functional capacity ("RFC") to perform her past relevant work as a store

cashier, insurance secretary, termite control secretary, insurance agent, and route driver.

### Errors Alleged for Review

Claimant asserts the ALJ committed error requiring reversal in (1) ignoring probative evidence which contradicted with his findings; (2) failing to perform the longitudinal evaluation of medical evidence related to RSDS; and (3) not adequately including Claimant's severe right upper extremity impairments in her RFC.

### Evaluation of Probative Evidence

Claimant contends the ALJ failed to discuss the medical evidence which did not support his finding of non-disability. On July 22, 2004, Claimant first sought treatment from Dr. David J. De La Garza after she bumped her elbow at work. She reported significant pain in the elbow and hand with evidence of media nerve irritation and ulna nerve irritation. Dr. De La Garza noted some intrinsic wasting with a little bit of clawing and posturing in the ulnar nerve distribution. Claimant demonstrated an inability to cross her fingers with diminished sensation in the ulnar nerve distribution as well as the media nerve distribution and had a Tinel over the media nerve. Dr. De La Garze did not find swelling or cold tolerance or hypersensitivity. At that time, Dr. De La Garza believed Claimant may have sustained a neuropraxia of the

ulnar nerve or an RSD that was resolving. (Tr. 152). After an examination on August 9, 2004, Dr. De La Garza recommended aggressive physical therapy. (Tr. 151).

In that same month, Claimant underwent physical therapy with Mr. Chance SaeLim, a physical therapist. On August 12, 2004, Mr. SaeLim found Claimant to be tender over the distal flexor wrist region and thenar eminence of on the right wrist. He found Claimant to be tight and tender over the right wrist extensor musculature region. Mr. SaeLim determined Claimant had decreased flexion of 67 degrees with pain in her right wrist and 75 degrees of flexion in her left wrist. Extension was decreased with pain in Claimant's right wrist to 54 degrees as compared with 83 degrees in her left wrist. Claimant had decreased radial deviation of 11 degrees with pain on the right as opposed to 18 degrees on the left. Claimant's right finger flexion was 75% while left finger flexion was 100%. Claimant had finger extension of 50% on the right and 100% on the left.

Claimant showed strength of 2+/5 with pain with wrist flexion, wrist extension, radial deviation, and ulnar deviation on the right with 5/5 on the left. Claimant's grip strength was 5 lbs. on the right with pain and 63 lbs. on the left. Her pinch was 2 lbs. on the right with pain and 12 lbs. on the left. (Tr. 228). Mr.

6

SaeLim set up a physical therapy program to improve Claimant's range of motion and flexibility. (Tr. 229).

In examinations of September 22, 2004 and October 20, 2004, Claimant was attended by Dr. Lorna Russell. Dr. Russell found Claimant had decreased range of motion and strength in her right hand and had difficulty crossing her fingers and making a fist. (Tr. 141, 143).

Decreased range of motion, hypersensitivity, and reduced strength were noted by Dr. Stephen Andrade in December of 2004 (Tr. 162-63). In March of 2005, Dr. Richard Hastings noted pain in Claimant's right shoulder, decreased range of motion in the shoulder, motor weakness, decreased flexion, extension in the right shoulder and right wrist. (Tr. 183-90). In May of 2005, Dr. A.E. Moorad noted tenderness in Claimant's right upper trapezius muscle and right shoulder, decreased grip strength in the right hand, and minimal sensitivity of her right elbow and right forearm. (Tr. 171-72). Dr. Moorad found sensitivity in Claimant's right upper extremity and reduced flexibility in June of 2005. (Tr. 167-68).

In August of 2005, Dr. Hastings continued to find Claimant was experiencing reduced grip strength and decreased range of motion. (Tr. 193-95). In December of 2005, Dr. Hastings found Claimant to be "100% permanently totally disabled and economically

7

unemployable." (Tr. 181). Dr. Hastings found continued reduced range of motion and grip strength as well as reduced mobility in the right shoulder. (Tr. 176-79).

In his decision, the ALJ found made little to no mention of these facts and findings of these physicians. He briefly discussed Dr. De La Garza's treatment (one sentence)(Tr. 18), referenced Dr. Moorad's findings to the extent they supported his finding of non-disability but omitted many of his findings of limitation (Tr. 18-19), and made reference to Dr. Hastings' finding of disability but none of his clinical findings (Tr. 19). The findings of Mr. SaiLim, Dr. Russell, and Dr. Andrade were entirely ignored in the opinion.

Certainly, it is well-recognized in this Circuit that an ALJ is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, he is required to discuss uncontroverted evidence not relied upon and significantly probative evidence that is rejected. Id. at 1010. An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). The ALJ's failure to consider the myriad of medical evidence which supported findings of greater

8

limitations upon Claimant's work-related abilities requires reversal and remand for further consideration.

### Longitudinal Evaluation

In accordance with Soc. Sec. R. 03-2p, RSDS can be considered a medically determinable impairment "[w]hen longitudinal treatment records document persistent limiting pain in an area where one or more of [the listed] abnormal signs has been documented at some point in time since the date of the precipitating injury. . . ." Since the ALJ failed to consider all of the lengthy treatment and diagnostic record of Claimant's condition, it is impossible to conclude he engaged in an appropriate analysis of Claimant's longitudinal treatment records. Accordingly, on remand, the ALJ shall consider the effect of the totality of these records upon a finding of a medically determinable impairment for Claimant's condition.

### RFC Evaluation

Similarly, because the ALJ did not consider many of Claimant's adverse treatment records of her condition, his RFC evaluation was incomplete. On remand, the ALJ shall reconsider his RFC assessment in light of the extensive medical record of the effect of Claimant's condition upon her ability to engage in work-related activities.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 26th day of March, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE